Miscellaneous Docket No. ___

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-01101-ADA, Hon. Alan D Albright

## APPLE INC.'S PETITION FOR WRIT OF MANDAMUS

Andrew N. Thomases
Andrew T. Radsch
ROPES & GRAY LLP
1900 University Avenue,
6th Floor
East Palo Alto, CA  94303
(650) 617-4763

Melanie L. Bostwick
Lauren A. Weber
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

Melanie R. Hallums
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
2121 Main Street
Wheeling, WV  26003

*Counsel for Petitioner*

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/01/2022

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

i

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | James R. Batchelder |
| Daniel W. Richards | Cassandra B. Roth | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................. i

TABLE OF AUTHORITIES .................................................. vi

INTRODUCTION ........................................................... 1

RELIEF SOUGHT .......................................................... 4

ISSUE PRESENTED ........................................................ 4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............... 4

    Aire sues Apple for patent infringement in the Western
        District of Texas despite having no connection to that
        district ................................................................. 4

    Apple moves to transfer the suit to the Northern District of
        California, and venue discovery proceeds ........................... 6

    The district court sua sponte orders the parties to complete
        fact discovery and "re-brief" Apple's transfer motion
        before it will consider whether to transfer venue ............... 13

REASONS FOR ISSUING THE WRIT ................................... 15

    I.    Apple Has A Clear And Indisputable Right To The
        Writ ................................................................. 16

        A.    The district court clearly abused its discretion by
            violating binding precedent requiring courts to
            prioritize transfer motions. ................................ 16

        B.    The district court's stated reasons for its
            extraordinary order cannot justify its departure
            from precedent. ............................................ 22

    II.    Apple Has No Other Adequate Means To Obtain Relief ...... 28

    III.    Mandamus Is Appropriate Here Because Apple Has A
        Strong Case For Transfer And The Equities Heavily
        Favor Apple. ...................................................... 30

iv

A.    The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified ........................................... 31

    1.    The private-interest factors strongly favor transfer. ............................................................. 32

    2.    The public-interest factors also favor transfer ... 36

B.    The equities heavily favor Apple. ................................ 37

CONCLUSION ...................................................................................... 40

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ......................................................... 33

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ............17, 18, 19, 20, 29, 30, 32, 36, 38

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............... 34

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367 (2004) ....................................................................... 16, 31

*Cont'l Grain Co. v. The Barge FBL-585*,
    364 U.S. 19 (1960) ............................................................................. 17

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ................................................. 17, 20

*In re Fusion-IO, Inc.*,
    489 F. App'x 465 (Fed. Cir. 2012) ..................................................... 20

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ................................................ 32, 33, 35

*In re Google Inc.*,
    No. 2015-138, 2015 WL 5294800 (Fed. Cir. July
    16, 2015) ....................................................18, 19, 20, 21, 22, 23, 29, 38

*In re Hoffman-La Roche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ......................................................... 33

*In re Horseshoe Ent.*,
    337 F.3d 429 (5th Cir. 2003) ....................................................... 18, 21

*In re Juniper Networks, Inc.*,
    14 F. 4th 1313 (Fed. Cir. 2021)................................... 24, 33, 35, 36, 37

*Koss Corp. v. Apple Inc.*,
No. 6-20-cv-00665-ADA, 2021 WL 5316453 (W.D. Tex.
Apr. 22, 2021) ...................................................................... 9

*LoganTree LP v. Apple Inc.*,
No. 6:21-cv-00397-ADA, 2022 WL 1491097 (W.D. Tex.
May 11, 2022) ...................................................................... 9

*McDonnell Douglas Corp. v. Polin*,
429 F.2d 30 (3d Cir. 1970) ................................... 17, 20, 24, 38

*In re Netflix, Inc.*,
No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) ............... 18

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) ................................ 17, 20

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ..................................... 31, 35

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................................... 35, 37

*In re SK hynix Inc.*,
835 F. App'x 600 (Fed. Cir. 2021) ...................... 18, 19, 21, 29, 30

*In re TracFone Wireless, Inc.*,
848 F. App'x 899 (Fed. Cir. 2021) ......................... 18, 21, 30

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ................................................. 29, 38

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .................... 15, 31, 32, 36, 37, 40

*In re Wyeth*,
406 F. App'x 475 (Fed. Cir. 2010) ................................... 17

**Statutes**

28 U.S.C. § 1404(a) .................................. 1, 18, 20, 29, 31, 36, 38

## Rules and Regulations

Fed. R. Civ. P. 30(b)(6) .................................................................. 7

Fed. R. Civ. P. 45(c)(1)(A)........................................................... 34

## Other Authorities

Apple's Response to Petition for Rehearing En Banc, *In re Apple Inc.*, No. 20-135, Dkt. 70 (Fed. Cir. Dec. 29, 2020) .................. 27

Discovery and Scheduling Order, *Scramoge Tech. Ltd. v. Apple Inc.*, 6:21-cv-01071-ADA, Dkt. 56 (W.D. Tex. Aug. 26, 2022) ........................................................................................ 15

Discovery and Scheduling Order, *XR Commc'ns LLC v. Apple Inc.*, No. 6:21-cv-00620-ADA, Dkt. 68 (W.D. Tex. Aug. 25, 2022)........................................................................................ 15

Discovery and Scheduling Order, *XR Commc'ns LLC v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022) ................................................. 15

Joint Stipulation of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 303 (W.D. Tex. July 23, 2022).................. 25

Order of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkt. 304 (W.D. Tex. July 23, 2022)............................... 25

Order Granting Motion To Transfer, *Cub Club Inv., LLC v. Apple Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 (W.D. Tex. Sept. 7, 2021) ..................................................................................... 9

## INTRODUCTION

This Court has held that motions to transfer venue under 28 U.S.C. § 1404(a) must be decided promptly, at the outset of litigation, before the case has progressed substantially on the merits. Indeed, the purpose of § 1404(a) transfer is to ensure that litigation takes place in a convenient forum with some meaningful connection to the dispute. Delaying a transfer ruling beyond decisions that affect the substantive issues in the litigation undermines that purpose by forcing litigants and a district court to spend time and resources proceeding in a forum that may not ultimately try the case. Thus, this Court has granted mandamus relief to order district courts to decide a transfer motion that has lingered on the docket while the case matures into substantive steps like discovery, claim construction, and other merits matters.

Here, without ruling on Apple's fully briefed transfer motion, the district court affirmatively ordered the parties to complete fact discovery and otherwise press forward on the merits, after which they must "re-brief" the transfer issue. Only then will the district court take up transfer. By that time—a full year after Apple first filed its transfer motion—the parties will not only have completed fact discovery (with

the district court resolving all discovery disputes), they will also have served final infringement and invalidity contentions, narrowed the asserted claims and prior art, and even exchanged their preliminary exhibit and witness lists for trial—all in an inconvenient forum that should not try this case.

The district court issued this scheduling order at the same time as it granted Apple's motion to supplement the evidentiary record on venue. But Apple's modest supplement does not warrant this substantial scheduling change or this violation of precedent. Apple moved to supplement because of a ruling from this district court, in an unrelated case, that criticized Apple's reliance on a declarant who provided information on behalf of the corporation and thus based on the corporation's knowledge, rather than limiting it to his personal knowledge. Apple had relied on the same approach in this case, so it offered additional declarations from the other Apple employees the corporate declarant had identified as relevant witnesses, each confirming based on their personal knowledge that the original declaration was accurate. These declarations contained no new facts, and Aire declined the opportunity to take any discovery in response to

them.  Nor did either party ask for a change to the scheduling order to accommodate the supplement.

The district court also expressed a general frustration with what it described as "transfer-driven speculation about the witnesses and evidence" that will be needed at trial, and it observed that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer."  Appx1-2.  But deciding a transfer motion after fact discovery ends is contrary to law.  Transfer is a threshold matter to be decided early in the litigation, based on the parties' best predictions about likely witnesses and evidence.  And those predictions—when made in good faith and based on a reasonable investigation—are typically reliable, contrary to the district court's assertion.  In Apple's own recent experience in this same district court, both parties' trial witness lists were drawn heavily from the list of California-based individuals that Apple provided at the transfer stage— and *not* the Texas-based individuals that the plaintiff cited to defeat transfer.

Mandamus is urgently needed to address the district court's unlawful scheduling order.  Indeed, in the ten days since the district

court issued that scheduling order in this case, it has adopted the same order in at least three other cases that Apple is aware of, including two where Apple is the defendant. The Court should grant mandamus to ensure that transfer motions receive the priority they deserve.

## RELIEF SOUGHT

Apple respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its scheduling order, promptly rule on Apple's pending transfer motion, and stay all district-court proceedings on the merits until transfer has been resolved.

## ISSUE PRESENTED

Whether Apple is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in requiring the parties to complete full fact discovery and otherwise move the litigation forward on the merits for another eight months before the district court will consider whether to transfer this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Aire sues Apple for patent infringement in the Western District of Texas despite having no connection to that district*

Aire is an Irish patent-holding company headquartered in Dublin. Appx14. Aire has no ties to the Western District of Texas. *See* Appx89.

Nonetheless, in 2021, Aire sued Apple and several other defendants in the Waco Division of the Western District of Texas. *See* Appx14-45; Appx93. Aire accused various models of Apple's iPhone and Apple Watch products of infringing its patents by virtue of their Apple Pay contactless payment features. Appx17-18. According to Aire, these capabilities of the accused Apple devices are implemented by a chip provided by a third party, NXP, that provides near-field communication (NFC) capabilities. Appx20; Appx38-42.

Nothing about this litigation has any meaningful connection to Texas, much less the Waco Division of the Western District of Texas. Apple's research, design, development, marketing, and finance operations for the accused technology all take place in the Northern District of California, where Apple is headquartered. Appx105; Appx107. Apple's likely trial witnesses are in California, including Apple employees who can explain the accused technology to the jury and Apple engineers familiar with the source code for the accused features. Appx107-109. The third parties with potentially relevant knowledge regarding Aire's allegations are also in California: Visa, eBay, and PayPal, all early players in NFC technology, are

headquartered there, and Apple's likely trial witnesses from NXP are located there. Appx92-93.

The original assignee of the asserted patents, a German company, appears to have no connection to the Western District of Texas. Appx88-89; Appx46-83. And the inventors of the asserted patents appear to be in Europe. Appx98; Appx116-157. By contrast, Apple identified at least seven prior-art inventors and one person knowledgeable about prior-art systems, all of whom live in California. Appx97-98.

### *Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds*

Because this case lacks any connection to the Western District of Texas, in April 2022, Apple filed a motion to transfer the case to the Northern District of California. *See* Appx84-103. Venue discovery started shortly thereafter. *See* Appx162.

In support of its transfer motion, Apple relied on the declaration of Mark Rollins, a finance manager at Apple, to establish certain facts, such as the relevance, role, and locations of witnesses and their teams, as well as the relevance and locations of various categories of documents. Appx90-92. As is typical and appropriate, both in venue

disputes and in litigation more broadly, Mr. Rollins provided this declaration as Apple's corporate representative—akin to a Rule 30(b)(6) deponent. Appx104-111. Mr. Rollins is well-suited to serve as a corporate witness because, as a finance manager, he has knowledge of sales and financial information concerning a broad array of Apple products that plaintiffs might accuse of infringement. Appx110. He provides this type of information based on his personal knowledge. Appx105. For information that Mr. Rollins does not know personally, such as the identity and location of engineering or other team members responsible for the accused technology, he provides that information under oath based on his "review of corporate records" and "discussions with Apple employees." Appx105.

Approximately one month after Apple filed its transfer motion in this case, the same district court granted Apple's motion to transfer in an unrelated case—*Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. May 25, 2022). Appx336-360. In doing so, the district court sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a corporate declaration in the *Scramoge* case that was comparable to his declaration in this case. Appx338-344.

As Apple demonstrated in later *Scramoge* filings, the district court's ruling identified no misstatements or other credibility deficiencies in the testimony given by Mr. Rollins. *See* Appx361-370 (Apple's motion to seal portions of the *Scramoge* transfer order); Appx372-389 (Apple's motion to vacate portions of the *Scramoge* transfer order). Instead, the district court faulted Mr. Rollins for doing exactly what corporate witnesses are obligated to do: gathering information from other individuals within Apple and relaying that information on behalf of the company. *See generally* Appx336-360. Indeed, the district court's ruling retroactively criticized statements Mr. Rollins had made in other cases, even though the district court itself (and sometimes this Court) had specifically credited those statements in ruling for Apple. *See* Appx339-341; *infra* n.1. The district court nonetheless stated that it was providing this "history" of "the offenses in Mr. Rollins's sealed declarations so that other courts and administrative agencies can similarly discount his credibility" in the future. Appx344 n.3.

Until the recent order in the *Scramoge* matter, Apple had no reason to know that the district court would take issue with this

8

manner of presenting corporate information in support of a transfer

motion.  Indeed, the district court had previously cited Mr. Rollins's

declarations favorably in other cases.[1]  And Apple does not believe that

the *Scramoge* order identified any actual problem with Apple's practice

of providing venue evidence through a corporate witness, let alone any

basis for questioning Mr. Rollins's "credibility."  But now that the

district court has expressed its preference for venue declarants to cover

only matters within their personal knowledge, Apple has endeavored to

comply.

   After receiving the *Scramoge* order, Apple acted promptly in this

case to obtain declarations from each of the Apple employees Mr.

Rollins had consulted in preparing his corporate declaration.  Appx178-

---

[1] *E.g.*, *LoganTree LP v. Apple Inc.*, No. 6:21-cv-00397-ADA, 2022 WL 1491097, at *3, *6-7 (W.D. Tex. May 11, 2022) ("accord[ing] weight to the Rollins Declaration's representation" regarding the location of the "source code and technical documents," and rejecting the plaintiff's criticisms of that declaration); Order Granting Motion To Transfer, *Cub Club Inv., LLC v. Apple Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 at 6-9 (W.D. Tex. Sept. 7, 2021) (crediting evidence provided by Mr. Rollins under compulsory-process and witness-convenience factors); *Koss Corp. v. Apple Inc.*, No. 6-20-cv-00665-ADA, 2021 WL 5316453, at *3 (W.D. Tex. Apr. 22, 2021) ("agree[ing] with Apple," based in part on Mr. Rollins's declaration, that the "access to sources of proof" factor favored transfer).

179.  Each of these declarations confirmed, based on the declarant's

personal knowledge, that everything in Mr. Rollins's original

declaration was accurate.  Appx179.

For example, Mr. Rollins's declaration stated that he had spoken

with Engineering Manager Glen Steele, who leads the Wallet Client

Engineering Team.  Appx107-108.  Mr. Rollins explained the

responsibilities of Mr. Steele and his team and the location of relevant

team members—including the fact that none were in Texas.  Appx107-

108.  In the declaration Apple obtained from him directly, Mr. Steele

confirmed that he had spoken to Mr. Rollins before the original

declaration was filed; stated that he had reviewed the relevant portions

of Mr. Rollins's declaration and confirmed the facts were "true and

correct"; and also restated all of the facts originally provided by Mr.

Rollins, testifying to them based on his personal knowledge.  Appx185-

189.

Each of the other new declarations provided the same

confirmation.  And each came from an individual named in Mr. Rollins's

original declaration, with one exception; because the person Mr. Rollins

spoke to about licensing was on leave at the time the supplemental

declarations were prepared, one of her colleagues reviewed and confirmed the relevant information. Appx180 n.1; *see* Appx191-194.

On June 22, 2022, shortly before the close of venue discovery, Apple served these additional declarations on Aire. Appx177. On the same day, Apple filed a motion for leave to supplement its transfer motion to include the declarations. Appx176-183. Apple explained that, in light of the criticisms in the *Scramoge* order, the district court would benefit from hearing directly from the Apple employees identified in Mr. Rollins's declaration. Appx178-179. Apple further explained that Aire would not be prejudiced because (i) Apple already had identified all but one of these employees in its transfer motion and Mr. Rollins's declaration (substituting only for the licensing witness who had gone on leave); (ii) the employees' declarations provided no new evidence because they were consistent with the information that Mr. Rollins had already provided in his declaration; and (iii) Aire had time to depose any of these employees before its response to the transfer motion was due. Appx177.

Apple also pointed out that, during more than two months of venue discovery, Aire had not sought to depose either Mr. Rollins or any

of the witnesses identified in his original declaration—that is, the same witnesses who signed the new declarations.  Appx177; Appx179. Nevertheless, Apple stated that it would not oppose extending the venue discovery deadline to allow Aire to depose these individuals if it wished, and that it would agree to a schedule that gave Aire more time to prepare its transfer opposition, without changing the deadline for Apple's reply.  Appx180-181; Appx232.

Aire, however, did not seek to take any depositions.  Instead, after two weeks had passed, it opposed Apple's motion to supplement, arguing that (i) Apple should have anticipated the district court's objections to Mr. Rollins's declarations; (ii) the new declarations provided only "duplicative" information to the existing record; and (iii) Aire would be prejudiced because it was "robbed" of the "opportunity to conduct any further investigation."  Appx204-206.  Aire did not identify any investigation it had actually undertaken, or any additional steps it might need to take to investigate the declarations that it admitted provided no new evidence.  And on the day after it opposed Apple's motion to supplement, Aire filed its opposition to Apple's transfer motion.  Appx210-225.  In opposing transfer, Aire

relied not on any of the venue discovery it took or could have taken, but solely on its own assertions based on the public LinkedIn profiles of 27 Austin-based Apple employees whom Aire claimed "potentially" possess or "appear" to possess relevant information.  Appx216-219; Appx235.

### *The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will consider whether to transfer venue*

On August 22, 2022, the district court granted Apple's motion to supplement its transfer motion over Aire's opposition.  Appx1-2.  In doing so, however, the district court also postponed ruling on Apple's transfer motion—which was at that point fully briefed—until after the completion of fact discovery on the merits.  The district court stated that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer."  Appx1. Although neither party had asked for a revised schedule, the district court sua sponte issued a new discovery and scheduling order, which requires the parties to "re-brief the motion to transfer … after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial."  Appx2.

The order provides for an additional 30 weeks of fact discovery (which had opened in July), to be followed by six weeks of additional briefing on the transfer motion.  Appx5-6.  In other words, the district court ordered the parties to engage in more than *eight months* of fact discovery and briefing before it will even consider whether to transfer venue.  During this time, the parties also will be required to take other substantive steps in the litigation, all according to the district court's particular rules and limitations (even if those rules differ from the ones in force in the ultimate transferee forum).  These include: litigating discovery disputes; adding parties before the district court's deadline passes; serving final infringement and invalidity contentions; amending pleadings; narrowing the asserted claims and prior art; litigating any dispute over that narrowing; and exchanging preliminary exhibit and witness lists for trial.  *See* Appx4-5.

Moreover, although the order states that the district court "finds it prudent to have the parties … re-brief the motion to transfer," Appx2, it does not allow Apple to file a new motion to transfer accounting for any additional information gleaned in months of discovery.  It instead

allows Aire to file a new opposition and Apple to file a new reply, and permits Aire to file a sur-reply for the first time. Appx5-6.

While unusual, the discovery and scheduling order in this case is not a one-off. Indeed, in the past week, the district court has entered nearly identical orders in at least three other patent-infringement cases (two against Apple) with pending motions to transfer venue. *See, e.g.*, *Scramoge Tech. Ltd. v. Apple Inc.*, 6:21-cv-01071-ADA, Dkt. 56 (W.D. Tex. Aug. 26, 2022); *XR Commc'ns v. Apple Inc.*, No. 6:21-cv-00620-ADA, Dkt. 68 (W.D. Tex. Aug. 25, 2022), Appx390-392; *XR Commc'ns v. Asustek Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022), Appx394-396. Each of these orders requires the parties to complete fact discovery and additional briefing, again over the course of more than eight months, before the district court will consider whether to transfer venue.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*,

545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). All three requirements are met here. First, mandamus is necessary to correct the district court's clear abuse of discretion in deferring resolution of Apple's transfer motion until fact discovery is complete and the case has progressed substantially on the merits. The Fifth Circuit and this Court have made clear that such delay is unlawful and warrants mandamus relief. Second, there is no other form of relief that would allow Apple to vindicate its right to seek transfer before the significant inconvenience of proceeding in the original forum occurs. Finally, the unreasonableness of the measure the district court took, and the strong merits of Apple's transfer motion, make mandamus eminently appropriate here.

## I.    Apple Has A Clear And Indisputable Right To The Writ.

### A.    The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions.

A request for transfer is a threshold matter that a district court must address at the outset of litigation. The transfer statute is designed "to protect litigants, witnesses and the public against

unnecessary inconvenience and expense." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27 (1960).  But that goal is "thwarted" when defendants must participate in protracted litigation before transfer is resolved.  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).  Indeed, "[t]o undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).

For that reason, this Court has stressed "the importance of addressing motions to transfer at the outset of litigation." *EMC*, 501 F. App'x at 975; *see also In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before issuing a transfer decision); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case.").  Just as defendants must file transfer motions promptly, *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir.

2010), district courts must rule on them promptly, *see Apple*, 979 F.3d at 1337-38.

The Fifth Circuit has likewise decreed that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has repeatedly used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate had ruled on venue motion after petition was filed).

18

The district court's scheduling order here is directly contrary to this precedent. While it defers the *Markman* hearing and claim-construction order "until the Court resolves the transfer motion," Appx5, those are only "two of the most important and time-intensive substantive tasks a district court undertakes," *Apple*, 979 F.3d at 1338. They are not the *only* important substantive tasks. The scheduling order here guarantees that the district court will undertake many other important substantive steps in this case before determining whether it is the venue where trial will ultimately take place.

Most notably, the order ensures that the district court will oversee all of fact discovery, including resolving any discovery disputes. But this Court has specifically identified these steps as ones that should await a transfer decision. *See id.* (faulting district court for holding "a discovery hearing, and issu[ing] a corresponding discovery order"); *SK hynix*, 835 F. App'x at 600-01 (faulting district court for "order[ing] the parties to engage in extensive discovery"; staying "all discovery" until transfer was resolved); *Google*, 2015 WL 5294800, at *1 (faulting district court for "proceeding through to the close of discovery" and conducting "a hearing related to several discovery disputes").

Moreover, this Court has repeatedly endorsed the Third Circuit's precedent holding that "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.[2]  The district court's order here does exactly what the Third Circuit deemed improper.  *Id.* at 31 (vacating order that required all merits discovery to be completed before district court would resolve transfer motion).

In addition, the order ensures that the parties must complete multiple other substantive steps in the Western District of Texas before the district court will even consider whether this case should be transferred to the Northern District of California.  Claim construction briefing will be completed; the deadline to add parties will pass; the parties will serve final infringement and invalidity contentions under the local patent rules of the Texas forum; the deadline to amend pleadings will pass; the parties will narrow the asserted claims and prior art (again, according to the Texas court's particular rules and

---

[2] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1; *Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012).

limitations); the district court will resolve any dispute over that narrowing; and the parties will exchange preliminary exhibit and witness lists for trial. *See* Appx4-5. All of this will take place before the parties are even permitted to resume briefing on Apple's transfer motion. In short, the district court's order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately may not preside over the case.

Furthermore, this substantive progress will take significant time. Apple filed its motion to transfer in April 2022. Appx11. Under the district court's scheduling order, that motion will not be fully briefed until a full year later, when Aire files a sur-reply in April 2023. *See* Appx6 (setting sur-reply deadline for 36 weeks after originally scheduled *Markman* hearing in August 2022). That is a significantly longer delay than the type this Court has previously found to be unacceptable in the transfer context and to warrant mandamus relief. *See Google*, 2015 WL 5294800, at *1 (delay of 8 months from filing of motion); *TracFone Wireless*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth

Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

A district court is not allowed to perpetuate this kind of delay by letting a transfer motion linger on its docket. *Google*, 2015 WL 5294800, at *1. It certainly cannot be allowed to achieve the same delay by ordering it to occur.

### B. The district court's stated reasons for its extraordinary order cannot justify its departure from precedent.

The district court did not address any of this precedent in issuing its scheduling order. Nor did it attempt to reconcile its built-in delay with the repeated admonishments of this Court and the Fifth Circuit to resolve transfer motions before proceeding with the merits, including merits discovery. And the district court's stated reasons for entering this scheduling order do not justify the clear violation of precedent.

**1.** The district court entered this order in the course of granting Apple's motion to supplement venue discovery. The district court stated that, "[i]n fairness, if one party supplements its motion, the Court will give the other party the same opportunity." Appx1. But giving Aire that opportunity would require, at most, a "short continuance," as Apple

offered.  Appx232.  Apple's supplemental declarations presented no new information from what was already in Aire's possession, and all but one came from the same individuals Aire had already chosen not to depose. Appx176-177.  Even if Aire had expressed a need to depose the one substitute witness—or to take any other supplemental venue-related discovery—there is no reason why a short continuance would not have sufficed, instead of the extreme option the district court chose.[3]

Furthermore, this Court has previously rejected the notion that a defendant's motion to supplement the transfer record justifies the kind of extreme delay the district court imposed here.  *See Google*, 2015 WL 5294800, at *1 (granting mandamus to correct delay despite "the fact that Google moved to supplement its motion to transfer").  Apple's requested supplement is just as modest as Google's was: Google sought to highlight particular deposition testimony, *id.*, while Apple sought merely to confirm that its corporate witness's representations were

---

[3] The district court noted Apple's representation that "it would not oppose a continuance."  Appx2.  That representation related to a "short continuance," Appx232, not an eight-month delay.

consistent with the personal knowledge of individual Apple employees, *supra* 11.[4]

**2.** The district court's second rationale fares no better. The district court opined that, in its experience, "speculation and incomplete[] discovery often plagues early transfer motions." Appx1. It asserted that "transfer-driven speculation about the witnesses and evidence fails to align with reality," and that parties end up relying on different witnesses and evidence at trial "from what they identify in their transfer briefs." Appx2. Notably, the district court did not cite any examples of this supposed mismatch. Nor did it attempt to square its position with the authority making clear that, despite the fact that litigation will evolve over time, merits discovery "is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31; *see also In re Juniper Networks, Inc.*, 14 F. 4th 1313, 1319 (Fed. Cir. 2021) (rejecting "the district court's categorical assumption that defendants are likely to call few if any of the proposed

---

[4] Like Google, Apple may have decided to withdraw its requested supplement if it had known that significant delay would be the price of a grant.

party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions").

Regardless, the real-world evidence tells a different story from what the district court suggested. In fact, the district court had available to it a recent example showing exactly the opposite of what it described. A patent case involving Apple, in which the district court had previously denied interdistrict transfer, recently settled just days before trial was set to begin. *See Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkts. 303, 304 (W.D. Tex. July 23, 2022). At the transfer stage, Apple identified 13 California-based Apple employees who would be likely trial witnesses, with none in Texas. Appx246-248. Koss, in contrast, argued that two relevant non-party witnesses were in Texas; that two Austin-based Apple employees were also likely witnesses; and that information it found on the Internet contradicted Apple's sworn testimony. Appx289-292. Despite Apple's showing that its Austin-based employees had no relevant information, the district court relied in part on Koss's unsupported speculation in denying transfer. Appx299-327.

The parties' witness lists, filed with the pretrial order shortly before trial was set to begin, bear out Apple's predictions at the transfer stage. Apple's "will-call" trial list included only four Apple employees: Each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx266-278 *with* Appx334 (identifying David Shaw, Aarti Kumar, Ariane Cotte, and Linda Frager as will-call trial witnesses). Apple's "may-call" list also included two Apple employees—again, each was a California-based witness identified in Apple's original transfer motion. *Compare* Appx266-278 *with* Appx335 (identifying Jeffrey Lasker and Baptiste Paquier as may-call trial witnesses). Plainly, Apple's transfer motion did not "identify witnesses and evidence based on location rather than relevance," as the district court charged here. Appx2. Rather, Apple undertook a good-faith investigation to identify the witnesses who would likely be relevant— and Apple's predictions were correct.

But the Koss side of the story is even more telling. Koss's trial witness lists did not include either of the Austin-based Apple employees whom Koss had featured in opposing transfer. *Compare* Appx279-297

*with* Appx329-330.[5]  Nor did Koss list the Texas-based third-party

individual who had worked on Koss's own accused products, despite

relying heavily on him at the transfer stage.  *Compare* Appx289-290

*with* Appx329-330 (Hytham Alihassan identified at transfer but not at

trial).[6]  But Koss did indicate its intent to call *nine* of the California-

based Apple employees that *Apple* had identified at the transfer stage—

listing a tenth as a "may-call" witness—despite vigorously opposing the

idea that many California-based Apple witnesses would be forced to

travel for trial.  *Compare* Appx329-330 *with* Appx279-297.

In other words, just as Apple predicted more than a year before

trial, a significant number of Apple employees would be required to

travel from their homes in Northern California to Waco, Texas, to

participate in this trial.  And this is not unusual: as Apple has

previously explained, its witnesses in patent trials—in any venue—

overwhelming come from Northern California.  *See In re Apple Inc.*, No.

---

[5] Koss did indicate its intent to call an Austin-based Apple employee
who supports Apple Care functions, but only by playing a portion of his
deposition.  Appx329-330.

[6] The other Austin-based non-party witness Koss had cited to oppose
transfer was listed as one of 25 "may-call" witnesses—with only 10
hours of trial time available to Koss.  *See* Appx330.

20-135, Dkt. 70, at 20 (Fed. Cir. Dec. 29, 2020) (noting that 87% of the 71 Apple employees who had testified live in patent trials since 2013 came from Northern California, with none coming from Texas).[7]

In short, to the extent the district court is concerned that parties are engaging in "transfer-driven speculation" that "fails to align with reality," Appx2, experience demonstrates that the most reliable information is provided by a party's sworn testimony and assertions that are tested through the venue-discovery process, not by geography-driven speculation.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Mandamus is the only way for Apple to obtain relief here. Without this Court's intervention, the district court will not consider the transfer motion for more than eight additional months while forcing Apple to litigate the merits of this case. No appeal from final judgment could remedy the inconvenience and expense of litigating for almost a year in a venue with no connection to this dispute.

---

[7] According to Apple's records, this statistic for patent trials through August 2022 is now approximately 92% from Northern California, and none from Texas.

Time and again, this Court has explained that transfer motions "should unquestionably take top priority" in a case. *Apple*, 979 F.3d at 1337; *supra* 16-18.  This Court has also made clear that mandamus relief is appropriate to resolve "a lengthy delay in ruling on a request for [transfer]," which "can amount to a denial of the right to have that request meaningfully considered." *Google*, 2015 WL 5294800, at *1. Such delays "frustrate … § 1404(a)'s intent to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In other words, a party whose transfer motion sits on the docket for months gathering dust suffers the same harm—unfixable on appeal—as a party whose transfer motion is improperly denied.  Both face the hassle and expense of litigating in an inconvenient venue that has little-to-no connection to the dispute.  Compare *id.* at *2 (granting mandamus and ordering the district court to decide the transfer motion within 30 days while staying all other proceedings), and *SK hynix*, 835 F. App'x at 601 (the district court's "refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative

means by which to obtain [relief]"), *with Apple*, 979 F.3d at 1337 ("the

possibility of an appeal in the transferee forum following a final

judgment … is not an adequate alternative" (citation omitted)).

Here, absent this Court's intervention, and despite a fully briefed

transfer motion, Apple will spend more than eight additional months

litigating "[f]ull fact discovery," Appx2, in a district court that almost

certainly will not rule on the merits of the case, *see infra* Part III.A

(explaining the especially strong case for transfer here).  And even if the

district court ultimately grants Apple's motion to transfer this case,

Apple cannot recover the time and resources that it will have spent

litigating fact discovery and moving forward on the merits in the

Western District of Texas.  Eight months is an "egregious delay" that

demonstrates "blatant disregard for precedent," and Apple "has no

alternative means" besides mandamus to avoid that delay.  *SK hynix*,

835 F. App'x at 600-01; *see TracFone Wireless*, 848 F. App'x at 900-01.

## III.  Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple.

Given the clear merits of Apple's underlying transfer motion and

the equities surrounding the district court's sua sponte scheduling

order, mandamus is especially "appropriate under the circumstances"
here. *See Volkswagen II*, 545 F.3d at 311 (quoting *Cheney*, 542 U.S. at
381). The district court's approach fundamentally undermines the
purpose of § 1404(a) while giving Aire a mulligan after it twice chose
not to seek any depositions from Apple. Only a writ of mandamus
directing the district court to promptly rule on Apple's pending transfer
motion can prevent this harm.

### A.    The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified.

As explained above (at 16-18), the purpose of resolving a § 1404(a)
motion is to prevent the parties from having to expend resources
litigating in an inconvenient venue—and one that may not ultimately
be the setting for trial. Here, as Apple's fully briefed transfer motion
demonstrates, this case has no connection to the Western District of
Texas, while the evidence, witnesses, third parties, and local interest
are overwhelmingly concentrated in the Northern District of California.
In short, this case involves the type of "stark contrast in relevance,
convenience, and fairness between the two venues" that compels
transfer. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Mandamus is therefore warranted to ensure that Apple is not forced to litigate in a clearly inconvenient forum for another eight months before its transfer motion is decided.

### 1. The private-interest factors strongly favor transfer.

The private-interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. These factors strongly favor transfer here, except the last, which the parties agree is neutral.

*Sources of Proof.* The sources-of-proof factor "relates to the ease of access to non-witness evidence, such as documents and other physical evidence." *Apple*, 979 F.3d at 1339. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documentation tends to be the more convenient venue. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the majority of Apple's relevant documents, business records, and source code are either in or more easily accessed

from the Northern District of California, where Apple is headquartered. Appx94-97; Appx105-107.  The identified potential sources of proof in the possession of third parties eBay, Visa, PayPal, Visa, and NXP are also likely in the Northern District of California.  Appx96.

Meanwhile, there appear to be no sources of proof in or more easily accessed from the Western District of Texas.  Aire, an Irish company, has no operations in that district.  And despite ten weeks of venue discovery, Aire has otherwise identified no sources of proof in Texas.  Aire's opposition on this factor depended almost entirely on leveling baseless attacks against Mr. Rollins's credibility.  Appx219-220. This factor thus weighs heavily in favor of transfer.  *See, e.g.*, *Juniper Networks*, 14 F.4th at 1321; *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

*Availability of Compulsory Process.*  The availability of compulsory process weighs heavily in favor of transfer because there appears to be "a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the [Western] District of Texas."  *Genentech*, 566 F.3d at 1345; *see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38

(Fed. Cir. 2009). Apple has identified highly relevant third-party witnesses who could be compelled to appear in the Northern District of California, including at least seven prior-art inventors and several companies with knowledge of relevant prior-art technology. Appx92-93; Appx97-98. Most importantly, key employees from NXP—the third party identified by Aire as supplying the NFC chips used in the accused products, and on which Aire has already served a subpoena—are in the Northern District of California and could be subpoenaed there, but not in Texas. Appx97; Appx238-239; *see* Fed. R. Civ. P. 45(c)(1)(A).

By contrast, there do not appear to be any relevant third-party witnesses who would be subject to compulsory process in the Western District of Texas. Aire's assertion otherwise ignored the record evidence and cited only NXP employees who do not work with Apple and thus have no information relevant to this litigation. Appx238-239. The compulsory-process factor thus weighs strongly in favor of transfer. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021).

*Witness Convenience.* As this Court has explained, "the relative convenience for and cost of attendance of witnesses between the two

34

forums is 'probably the single most important factor in [the] transfer analysis.'" *Juniper Networks*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343); *see also Nintendo*, 589 F.3d at 1198-99. And here, that most important factor appears to weigh entirely in favor of transfer. *See, e.g.*, *Juniper Networks*, 14 F.4th at 1319; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

Apple provided sworn testimony specifically identifying its technical and likely trial witnesses, including Apple engineers familiar with the accused technology and relevant source code and Apple employees knowledgeable about Apple's financial records, marketing initiatives, and patent licensing. All are in the Northern District of California, and no relevant team members are in Texas. *See* Appx90-91; Appx98-100; Appx107-110.

As noted above (at 12), Aire's opposition strategy was to scour the LinkedIn profiles of Austin-based Apple employees to find some mention of Apple Pay. Aire did not identify any of these individuals in response to Apple's venue-discovery requests asking it to identify relevant potential witnesses. Appx237. Nor did Aire seek to depose any of these witnesses, or any other Apple witness, to find out if they

actually had relevant information.  And they do not, as Apple's reply

thoroughly demonstrated.  Appx235-237.

### 2.  The public-interest factors also favor transfer.

The § 1404(a) public-interest factors include: "(1) the

administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws [or in] the

application of foreign law."  *Volkswagen II*, 545 F.3d at 315 (alteration

in original).  Here, each of the public-interest factors that is not neutral

favors transfer.

*Local Interests*.  Because of its "significant connections" with "the

events that gave rise to [the] suit," the Northern District of California

has a strong local interest.  *Apple*, 979 F.3d at 1344-45; *see also Juniper

Networks*, 14 F.4th at 1319-20.  And since Aire has no known

connections to the Western District of Texas, the local interest factor

strongly favors transfer.  *Apple*, 979 F.3d at 1345.  Aire's only response

was to insist that the 27 Austin-based Apple employees that it had

identified, despite having no demonstrated relevance, made Austin the locus of local interest.  Appx223-224.

*Court Congestion*.  The relative congestion of the two courts—the Western District of Texas and Northern District of California—has at worst a neutral effect on the transfer analysis.  This Court has repeatedly "noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 14 F.4th at 1322; *see also, e.g.*, *Samsung*, 2 F.4th at 1380-81.  Aire's opposition ignored this precedent in arguing otherwise.  Appx223.

## B.    The equities heavily favor Apple.

The simple fact that the district court ignored clear precedent and guaranteed months of delay before it will address Apple's transfer motion is enough to warrant mandamus relief.  "[A] court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents," and "mandamus is entirely appropriate to review for an abuse of discretion that clearly exceeds the bounds of judicial discretion." *Volkswagen II*, 545 F.3d at 310.  But here, mandamus is

especially warranted in view of how the district court's order came about and the effects it will have if permitted to stand.

To start, the district court's sua sponte scheduling order fundamentally undermines § 1404(a)'s purpose: "to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen*, 376 U.S. at 616). Section 1404(a) serves that purpose only when district courts give transfer motions "top priority." *Apple*, 979 F.3d at 1337. Here, if the district court's order stands, the parties will have done almost everything short of preparing for the pretrial conference before the district court rules on the transfer motion. *Supra* 14.

Likewise, the district court will have expended considerable resources familiarizing itself with the case to, among other things, resolve disputes over discovery and the asserted claims and prior art. *Supra* 14. But judicial efficiency requires that the "district court should not burden itself with the merits of the action until [the transfer motion] is decided." *McDonnell Douglas*, 429 F.2d at 30. If Apple's motion is ultimately granted—as it should be, *see* Part III.A—another

district judge will receive a brand-new case that is well into litigation, in which many issues have been resolved, and in which trial preparation is underway according to another court's rules and preferences. There is no reason to burden a judge with that outcome.

There is particularly no reason to do so when no party has asked for that result. In opposing Apple's motion to supplement, Aire did not ask for more time to test the facts contained in the new declarations. On the contrary, Aire agreed that those declarations supplied the same information already in Aire's possession, and which Aire had elected not to test through the venue-discovery process. Aire does not seem to be interested in taking any additional steps to ensure "an accurate identification of the witnesses, parties, and evidence relevant to this case," Appx1. Instead, like Koss and many other patent plaintiffs before it, Aire has asked the district court to resolve transfer by weighing Apple's sworn evidence against Aire's unsupported characterizations of Apple employees. *Supra* 25-28; Appx216-219. There is no reason to delay the transfer analysis while litigation continues in an inconvenient forum.

Finally, "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319.  That is true here.  In the span of just a week, the district court issued the same merits-before-transfer scheduling order in at least four separate patent-infringement cases, including this one.  *Supra* 15.  This Court should weigh in before the district court adopts that unlawful scheduling order as its standard practice.

## CONCLUSION

The Court should issue a writ of mandamus directing the district court to vacate its scheduling order, rule on Apple's pending transfer motion (with or without considering the supplemental evidence), and stay all proceedings on the merits until transfer has been resolved.

Respectfully submitted,

_/s/ Melanie L. Bostwick_

| | |
|---|---|
| Andrew N. Thomases | Melanie L. Bostwick |
| Andrew T. Radsch | Lauren A. Weber |
| ROPES & GRAY LLP | ORRICK, HERRINGTON & |
| 1900 University Avenue, | SUTCLIFFE LLP |
| 6th Floor | 1152 15th Street NW |
| East Palo Alto, CA  94303 | Washington, DC  20005 |
| | (202) 339-8400 |

Melanie R. Hallums
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2121 Main Street
Wheeling, WV  26003

_Counsel for Petitioner_

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on September 1,

2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via FedEx:

Brett E. Cooper
Reza Mirzaie
Marc A. Fenster
Seth Hasenour
Drew B. Hollander
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Tel: (310) 826-7474
bcooper@raklaw.com
rmirzaie@raklaw.com
mfenster@raklaw.com
shasenour@raklaw.com
dhollander@raklaw.com

Hon. Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7641 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*